UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHMAD R. BARAT,<br><br>          Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>          Defendant.<br>_____/ | No. C 09-02536 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Cross-Motions for Summary Judgment** |

      Plaintiff Ahmad R. Barat ("Barat") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). Now before the court are the parties' cross-motions for summary judgment. Having considered the parties' arguments and submissions, and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.     Medical Records

      On December 6, 1994, at the age of 14, Barat was sitting on a curb when a car ran over both of his legs. AR 263-270. As a result, his left leg was amputated above the knee and his right leg was fit with a metal rod. AR 201, 205, 263. He was fitted with a prosthesis for his left leg, which he used for two years; he then switched to a different prosthetic for nine years. AR 201. In October 2005, Barat underwent an evaluation with a chiropractor at Active Life Medical Center, after which he was diagnosed with scoliosis, lumbar strain and lumbar myofascitis. AR 175-197. On May 3,

2006, Barat underwent an orthopedic evaluation by Dr. Feng Bai, which revealed that Barat had left thigh pain with low back and middle back pain, right knee pain and phantom pain in his left stump and that his left leg was one inch longer than his right. AR 201, 205. Dr. Bai observed that due to Barat's weight gain, the prosthesis he had been using for nine years no longer fit well, and he stated that Barat ambulated "with uneven gait. The left stump is not quite well due to his body shape change." AR 203-204. Dr. Bai further observed that this condition would improve after he obtained a good new prosthesis. AR 206. In February 2007, Barat was involved in an automobile collision and sought chiropractic treatment. AR 309-316. He was diagnosed with cervical, thoracic and lumbosacral sprain/strain by Michael R. Tereo, DC. AR 311-316. Barat underwent physical therapy through May 2007. *Id*. On June 19, 2007, Barat went to the emergency room at Stanford University Medical Center for lumbar muscle strain. AR 258-262. On August 27, 2007, Barat underwent an evaluation from Hanger Prosthetics to be fitted for a new prosthetic leg. Hanger Prosthetics concluded that Barat met the requirement for a new leg based on "medical necessity" given "evidence that the existing prosthesis is potentially unsafe for the patient." AR 240. The cost of a new prosthetic was between $52,000-71,000. AR 249.

II.   Procedural History

    Barat previously filed applications for disability insurance benefits and supplemental security income in 1995, 1996 and on August 11, 2004, but these applications were denied on the grounds that although he could not perform his past work, he could do other work. AR 15. In March 2006, Barat filed the present application, alleging a disability onset date of December 1, 2004. AR 81, 84. In June 2006, an SSA physical residual functional capacity assessment found that Barat could perform a reduced range of sedentary work. The agency denied the application initially and on reconsideration. AR 47-51, 58, 63. Upon Barat's request, a hearing was held before an Administrative Law Judge ("ALJ") on September 17, 2007. AR 23-46. Barat was not represented by counsel at the hearing. AR 25-26.

    Barat testified that he had worked as a cell phone salesperson at shopping mall kiosks from 1999-2005 and that he had performed some part-time commissions-based work as a mortgage loan

1  officer. AR 32-34. He testified that he had been able to perform a job where he could sit and lean
2  "all the way back" with a pillow behind him as long as he could alternately stand up or sit down
3  every thirty minutes, but that he still would feel numbness in his right hip. AR 36-37. He explained
4  that he could stand for about 10-15 minutes at a time before his back started to hurt and that he could
5  remain seated for about an hour. AR 40-41. He stated that he continued to look for work and had
6  some interviews for part-time sales positions. AR 38.

7  Barat explained that he had difficulty obtaining a new, properly-fitting prosthesis, due to
8  limits on what Medi-Cal would cover. AR 31. He testified that his prosthesis broke in 2007 and
9  that he was without a prosthetic leg for a few months. *Id*. He explained, however, that he was able
10 to obtain a replacement knee joint, but not an entirely new prosthesis. AR 31-32. Barat used a cane
11 at the hearing, and he testified that he normally used a cane for stability. AR 31.

12 The ALJ informed Barat that he thought there were jobs available to Barat that would allow
13 him to have the choice of sitting or standing during the work day and accordingly have "a lot of
14 freedom to alternate positions." AR 39. The ALJ then proceeded to consult a Vocational Expert
15 ("VE"):

ALJ: [I]f we assume someone of the claimant's age, education and experience, and assume a capacity for exertionally light work; no kneeling, no crouching; no ladders, ropes or scaffolds and sit/stand at will option, could the claimant's retail sales job be done?

VE: No, Sir. It doesn't allow for a sit/stand option.

ALJ: Okay. Any other jobs at the unskilled light or sedentary levels that could be performed?

VE: Well there, there's a grouping of jobs, Your Honor, that, that through observation we've determined can be performed, sit/stand option . . . In the Dictionary of Occupational Titles, which is the standard book that we have to use, it's listed under cashier II . . .and what it's talking about is something like a self-service gas station, self-service parking lot, toll takers . . . ticket clerks in a, in certain movie theaters, those kinds of jobs, and the DOT number for that is 211.462-010 . . . It's considered unskilled. It's considered light. The DOT calls it light, but by observation we've determined that it's sit/stand . . . light or sedentary, and it is at will. Locally there's about, oh, 11,000 of those jobs locally, nationally less than 1,000,000 . . . [approximately] 981,000 . . . There are other jobs that may very well permit it [sit/stand option], but there's no way . . . for us to tell, number-wise I mean, like security, or gate guard, lobby guard, some of those kinds of jobs would permit it, but there's no way for us to tell how many there are.

3

AR 41-42.

On November 17, 2007, the ALJ issued a written decision denying Barat's application. AR 15-22. The ALJ determined that Barat had a "severe" impairment in the form of "status-post traumatic left leg amputation, with recent replacement of prosthesis." AR 21. The ALJ determined, however, that Barat retained the residual functional capacity ("RFC") to "to perform 'light' work activities, as defined at 20 C.F.R. 404.1567(b), 416.967(b), with no lifting over 20 pounds occasionally and 10 pounds frequently; with no kneeling or crouching; with occasional climbing of ramps and stairs (but no climbing of ladders, ropes or scaffolds); and with no sitting or standing more than one hour at a time without the ability to change positions at will." AR 19. The ALJ observed that this "RFC comports with less than the full range of light work." *Id*. The ALJ credited Barat's testimony to the extent it indicated some ability to do work, but he found Barat's testimony regarding the extent of his symptoms not to be credible. AR 20. The ALJ noted "that when seen by Dr. Bai, the claimant was taking only over-the-counter remedies for low back pain. Over the years, medical treatment has been virtually non-existent, until recently." *Id*. The ALJ accepted the VE's testimony and opinion that Barat could not perform his past relevant retail work but that he could do "an array of unskilled, entry-level light jobs existing in the national economy and the several regions of the country." *Id*. He specifically pointed to "Cashier II (self-service cashier)," DOT, Code No. 211.462-010, and noted that the VE "confirmed that these jobs normally allow the employee to sit or stand at will, even thought the DOT is silent regarding sit-stand options. I credit the VE's 40 years of experience in the field of vocational counseling, rehabilitation, and consulting." *Id*.

On November 27, 2007, the Appeals Council denied Plaintiff's request for review on April 3, 2009, making the ALJ's decision the final decision of the Commissioner. AR 1-3. Barat brought this action on June 5, 2009, and on April 6, 2011, he moved for summary judgment, citing numerous alleged errors in the ALJ's analysis: (1) the ALJ failed to consider all relevant medical records in his RFC analysis; (2) the ALJ failed to properly account for Barat's use of a cane; (3) the ALJ improperly deviated from the DOT in concluding that "Cashier II" allowed for a sit/stand at-will option; (4) the ALJ failed to provide clear and convincing evidence for discrediting Barat's

4

testimony. Docket No. 22. On May 6, 2011, the Commissioner cross-moved for summary judgment on the grounds that substantial evidence supported the ALJ's decision.

LEGAL STANDARD

This court may disturb the Commissioner's final decision "only if it is not supported by substantial evidence or if it is based on legal error." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993). It is more than a scintilla, but less than a preponderance. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court's review "must consider the record as a whole," weighing both that evidence which supports as well as that which detracts from the Commissioner's decision. *Desrosiers v. Sec'y of Health & Human Serv.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be affirmed. *Andrews*, 53 F.3d at 1039-40. However, the Commissioner's decision should be set aside if improper legal standards were applied in reaching that decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

In order to qualify for disability benefits, a person must establish a medically determinable physical or mental impairment that is expected to result in death or last for a continuous period of at least twelve months which prevents him or her from engaging in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520, 416.920. In assessing whether a claimant is disabled, the ALJ must use a five-step analysis in which progression to the next step is contingent on the result of the previous step. *See Bowen v. Yuckert*, 482 U.S. 137, 141-43 (1987). The five steps are (1) whether claimant is presently gainfully employed; (2) whether claimant has a severe impairment; (3) whether the impairment meets or equals one of the impairments determined to be conclusively disabling, or (4) whether the impairment prevents the claimant from performing his or her past relevant work; and (5) if the claimant can show she is unable to perform her past work, the burden shifts to the

5

Commissioner to show whether the claimant is unable to perform any other work within the national economy. *See id.*

DISCUSSION

The parties do not challenge the ALJ's determinations at steps 1, 2 and 3 of the five-step sequential analysis. At issue are his determinations at steps 4 and 5 that Barat possesses the RFC to perform a limited range of light work and that there exist a significant number of jobs in the national and local economy matching Barat's vocational attributes.

The ALJ's reliance on the VE testimony and deviation from the listings in the DOT constitute reversible error. A crucial element of the ALJ's finding of no disability was that there existed a significant number of cashier positions that allowed for an at-will sit/stand option, even though the DOT classified "Cashier II" as light exertional work and did not expressly include the sit/stand option. Crediting the VE's forty years of experience, but without inquiring further, the ALJ accepted the VE's opinion that Cashier II generally provides the required sit/stand option. The VE was unable to identify any other position that met Barat's RFC and existed in sufficient numbers, and the record appears to indicate that Barat's application would be granted but for the ALJ's findings regarding the Cashier II position.

An ALJ must rely primarily upon the DOT for guidance as to the employee requirements for different job types in the national economy. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Although the ALJ may also consult testimony from vocational experts, SSR 00-4p states that the ALJ "has an affirmative responsibility to ask about any possible conflict between that V[ocational Expert] or VS evidence and information provided in the DOT." Specifically, the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* Only after determining whether the vocational expert has deviated from the DOT and whether any deviation is reasonable can an ALJ properly rely on the vocational expert's testimony as substantial evidence to support a disability determination. *Massachi*, 486 F.3d at 1153-54.

6

1   The ALJ here acknowledged that there may be a conflict between the VE testimony and the
2   DOT. The DOT classifies Cashier II as "light work," which may require, *inter alia*, "a good deal of
3   walking or standing." 20 C.F.R. § 404.1567(b). The ALJ determined that Barat has an RFC to
4   perform "less than the full range of light work," with the limitation that he cannot sit or stand "more
5   than one hour at a time without the ability to change positions at will." Although the DOT is silent
6   regarding the sit/stand option for the Cashier II position, there can be a conflict, for purposes of SSR
7   00-4p, between VE testimony that a particular position has a sit/stand option and a DOT
8   classification of "light work." *Smith v. Astrue*, No. C 09-03777, 2010 WL 5776060, at *12 (N.D.
9   Cal. Sept. 16, 2010) (Patel, J.) ("This court holds that because the DOT does not address sit/stand
10  options, the potential inconsistency between the vocational expert's testimony and DOT warrants
11  further inquiry on remand.").

12  Given the apparent conflict between the VE testimony and the DOT, the ALJ had an
13  "affirmative responsibility" to "obtain a reasonable explanation for the conflict." He did not do so.
14  The VE testified simply that "by observation we've determined" that Cashier II has a sit/stand
15  option, and the ALJ in his written decision "credit[ed] the VE's 40 years of experience" in finding
16  other work available for Barat. As in *Smith*, however, "the vocational expert did not explain how he
17  came to the conclusion that these jobs offered a sit/stand option." 2010 WL 5776060, at *12. As
18  Barat points out, the VE did not indicate, nor did the ALJ inquire into, the particular bases for his
19  opinion, for example, by providing details regarding the placements he had "observed" allowing a
20  sit/stand option. The Ninth Circuit has concluded that it is inappropriate for an ALJ to simply defer
21  to the VE's "experience" when resolving a conflict between the DOT and a VE's testimony.
22  *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("The ALJ did not identify what aspect of
23  the VE's experience warranted deviation from the DOT, and did not point to any evidence in the
24  record other than the VE's sparse testimony for the deviation."). Given the importance of the VE
25  testimony to the ALJ's ultimate conclusion and the ALJ's failure to obtain a reasonable explanation
26  for deviating from the DOT, the ALJ's decision must be vacated, and Barat's claims must be
27  remanded to the Commissioner for further proceedings. The court does not opine as to whether
28

7

there is in fact a reasonable basis for concluding that Cashier II positions generally have a sit/stand option.

Although the court vacates the ALJ's decision and accordingly does not need to address the parties' remaining arguments, it may be helpful to provide guidance as to other deficiencies present in the analysis below. In several respects it appears that the ALJ failed to sufficiently develop the record, and such errors undoubtedly were compounded by Barat's lack of representation at the hearing. However, "[t]he ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel . . . When a claimant is not represented by counsel, this responsibility is heightened." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (internal citations omitted).

Most significantly, the ALJ appears not to have taken Barat's use of a cane into consideration when determining his RFC. Although the ALJ acknowledged the use of the cane at the hearing and in one sentence of his written decision, he did not address specifically whether and how the use of the cane would impact Barat's mobility and stability. As indicated by Social Security Ruling 96-9p, the use of a hand-held assistive device has the potential to significantly erode the occupational base for the individual who uses such device. SSR 96-9p at *7. This is particularly true where there is an impairment of both lower extremities. *Id*. Given that Barat's left leg was amputated above the knee and that he has a metal rod in his left leg, the ALJ should have inquired as to the medical necessity and consequences of Barat's use of a cane. If Barat's has a genuine need for a cane, such limitation also should be included in any hypothetical questions to the VE. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to a vocational expert must set out *all* the limitations and restrictions of the particular claimant[.]" (emphasis in original)).

A related issue appears to be the status of Barat's prosthesis. The medical evidence indicated a need for Barat to obtain a better fitting prosthetic, and Barat testified that he was only able to obtain a new knee joint rather than an entirely new leg. The ALJ's decision does not appear to acknowledge this distinction, *see* AR 19 ("Recently, he has had to adjust to a new prosthetic device when his former one broke, and he has apparently had a couple of minor mishaps."), and the ALJ did

8

not inquire into the implications for Barat of obtaining only a partial replacement for his ill-fitting prosthetic device.

Barat also challenges the ALJ's adverse credibility finding regarding the severity of Barat's symptoms. "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence . . . Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). Although Barat's use of only over-the-counter pain medications and infrequent medical treatment are often sufficient reasons for discrediting a claimant's testimony, *see, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (citing lack of consistent treatment for back pain); *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (citing lack of strong pain medicine), Barat argues that his financial limitations prevented him from seeking more extensive medical treatment, *see* Docket No. 24 at 12; *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment"). This issue must be addressed more fully on remand.

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED; defendant's cross-motion for summary judgment is DENIED; and this action is hereby REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. section 405(g), for further proceedings consistent with this order. The Clerk of Court shall close the file.

IT IS SO ORDERED.

Dated: June 16, 2011

MARILYN HALL PATEL
United States District Court Judge
Northern District of California